Case No. 23-35226

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

SOVEREIGN IÑUPIAT FOR A LIVING ARCTIC, et al.,
Plaintiffs-Appellants,

v.

BUREAU OF LAND MANAGEMENT, et al.,
Defendants-Appellees,

and

CONOCOPHILLIPS ALASKA, INC., et al.,
Intervenor-Defendants-Appellees.

---

On Appeal from the United States District Court
for the District of Alaska

Case No: 3:23-cv-00058-SLG

---

## EMERGENCY MOTION UNDER CIRCUIT RULE 27-3(a)

## (RELIEF REQUESTED BY APRIL 7, 2023)

---

Bridget Psarianos (AK Bar No. 1705025)
Suzanne Bostrom (AK Bar No. 1011068)
Brook Brisson (AK Bar No. 0905013)
TRUSTEES FOR ALASKA
121 W. Fireweed Lane, Suite 105

Anchorage, AK 99503
Phone: (907) 276-4244
Fax: (907) 276-7110
bpsarianos@trustees.org
sbostrom@trustees.org
bbrisson@trustees.org

*Counsel for Plaintiffs-Appellants*

## CIRCUIT RULE 27-3 CERTIFICATION

I, Suzanne Bostrom, certify the following facts to be true, pursuant to Circuit Rule 27-3(a):

1.      I am an attorney for Plaintiffs-Appellants Sovereign Iñupiat for a Living Arctic, Alaska Wilderness League, Environment America, Northern Alaska Environmental Center, Sierra Club, and The Wilderness Society (collectively "SILA"). I have personal knowledge of the matters stated herein and, if called as a witness, could competently testify thereto. I submit this declaration in support of Appellants' Emergency Motion Under Circuit Rule 27-3 for a Stay Pending Appeal.

2.      Following are the telephone numbers, e-mail addresses, and office addresses of the parties' attorneys:

Bridget Psarianos
Suzanne Bostrom
Brook Brisson
TRUSTEES FOR ALASKA
121 W. Fireweed Lane, Suite 105
Anchorage, AK 99503
Phone: (907) 276-4244
Fax: (907) 276-7110
bpsarianos@trustees.org
sbostrom@trustees.org
bbrisson@trustees.org

Counsel for Plaintiffs-Appellants

i

Paul Turcke
Trial Attorney, Appellate Section
Environment & Natural Resources Division
U.S. Department of Justice
1290 West Myrtle Street, Suite 500
Boise, ID 83702
202-532-5994
paul.turcke@usdoj.gov

Amy Collier
Trial Attorney, Appellate Section
Environment & Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 305-5360
amy.collier@usdoj.gov

Counsel for Federal Defendants-Appellees

Ryan P. Steen
Jason T. Morgan
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: 206.624.0900
Facsimile: 206.386.7500
ryan.steen@stoel.com
jason.morgan@stoel.com

Whitney A. Brown
STOEL RIVES LLP
510 L Street, Suite 500
Anchorage, AK 99501
Telephone: 907.277.1900

ii

Facsimile: 907.277.1920
whitney.brown@stoel.com

Counsel for ConocoPhillips Alaska, Inc., Defendant-Intervenor-Appellees

Stacey Bosshardt
Eric Fjelstad
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005
Telephone: 202-654-6200
SBosshardt@perkinscoie.com
EFjelstad@perkinscoie.com

Counsel for Arctic Slope Regional Corporation, Defendant-Intervenor-Appellees

Tyson C. Kade
Jonathan D. Simon
Melinda L. Meade Meyers
Charlene Koski
VAN NESS FELDMAN, LLP
1050 Thomas Jefferson Street,
NW Washington, DC 20007
Telephone: 202-298-1800
tck@vnf.com
jxs@vnf.com
mmeademeyers@vnf.com
cbk@vnf.com

Counsel for North Slope Borough, Defendant-Intervenor-Appellees

Patrick W. Munson
Brooks W. Chandler
Charles A. Cacciola
CHANDLER, FALCONER, MUNSON & CACCIOLA, LLP
911 W. 8th Avenue, Suite 302,

iii

Anchorage, AK 99501
Telephone: 907-272-8401

Counsel for Kuukpik Corporation, Defendant-Intervenor-Appellees

Mary Hunter Gramling
STATE OF ALASKA, DEPARTMENT OF LAW
P.O. Box 110300
Juneau, AK 99811
Telephone: 907-465-3600
Mary.gramling@alaska.gov

Counsel for the State of Alaska, Defendant-Intervenor-Appellees

3.     SILA respectfully requests an emergency injunction pending appeal to halt all construction activities associated with the Willow Master Development Plan project ("Willow"), which includes the opening of a gravel mine and building of a gravel road in Arctic wetlands this winter in an area used for subsistence and recreation. Gravel mining and road construction activities have begun, causing irreparable harm to SILA.

4.     On March 14, 2023, SILA filed suit against the Bureau of Land Management (BLM), U.S. Fish and Wildlife Service, and the U.S. Department of the Interior challenging Willow. SILA moved for a preliminary injunction on March 16, 2023. On April 3, 2023, the District Court denied the motion, and SILA filed a Notice of Appeal. *See* Ex. 22; Ex. 23. SILA also notified all counsel of record by email of SILA's intent to file a Motion for Injunction Pending Appeal

iv

with the District Court. Federal Defendants and Defendant-Intervenors indicated they opposed SILA's Motion for an Injunction Pending Appeal. SILA filed the motion in the District Court on April 4, 2023. Ex. 24. The District Court denied the Motion for an Injunction Pending Appeal the same day. Ex. 25. SILA filed this motion as soon as possible after the District Court ruled on its Motion for Injunction Pending Appeal. Federal Defendants-Appellees and Defendant-Intervenors-Appellees stated they oppose the present motion.

5.      SILA is compelled to seek emergency relief in this case. If allowed to proceed, construction of a gravel mine and gravel road will irreparably harm fragile Arctic tundra, permanently alter wetlands, and displace subsistence and recreational use. All grounds advanced in support of this motion were submitted to the District Court.

6.      According to declarations filed in the District Court, ConocoPhillips began ice road construction on March 13, 2023, and expected to break ground and begin gravel hauling and road construction at the Willow mine site on April 4. Ex. 5 at 4. On April 4, 2023, counsel for ConocoPhillips confirmed that ConocoPhillips is already proceeding with winter construction and that its construction schedule is unchanged. Counsel for ConocoPhillips also indicated it

would not pause its construction activities pending SILA's appeal and this motion. A decision on this motion is needed by April 7, 2023, because activities are ongoing and, based on information from ConocoPhillips' counsel, the winter-construction season will end on approximately April 25, 2023, depending on the weather.

7.     On April 4, 2023, I notified the Ninth Circuit Court staff via e-mail of SILA's intent to file an emergency motion seeking an injunction pending appeal in this Court should the District Court deny the motion for an injunction. I emailed again immediately preceding filing the present motion.

8.     Counsel for SILA served all counsel of record a complete copy of this motion and exhibits via ECF or e-mail today.

I declare under penalty of perjury that the foregoing is true.

Dated: April 5, 2023

*s/ Suzanne Bostrom*
Suzanne Bostrom
Attorney for Plaintiffs-Appellants

CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Plaintiffs-Appellants Sovereign Iñupiat for a Living Arctic, Alaska Wilderness League, Environment America, Northern Alaska Environmental Center, Sierra Club, and The Wilderness Society state that they have no parent companies, subsidiaries, or affiliates that have issued shares to the public in the United States and that no publicly held corporation owns 10% or more of their stocks because they have never issued any stock or other security.

## TABLE OF CONTENTS

CIRCUIT RULE 27-3 CERTIFICATION ................................................................. I

CORPORATE DISCLOSURE STATEMENT ........................................................ VII

TABLE OF CONTENTS ................................................................................... VIII

TABLE OF AUTHORITIES ................................................................................ IX

TABLE OF EXHIBITS ..................................................................................... XIII

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 1

LEGAL STANDARDS ........................................................................................ 5

ARGUMENT .................................................................................................... 6

    I.      SILA WILL SUFFER IRREPARABLE HARM. ........................................ 6

    II.    SILA IS LIKELY TO SUCCEED ON THE MERITS. ................................ 11

          A.    SILA Is Likely to Succeed on the Merits of Its NEPA and NPRPA Claim. ...................................................................... 11

          B.    BLM Violated ANILCA Section 810 by Failing to Consider Alternatives that Reduce Impacts to Subsistence Uses. .......... 15

    III.   THE BALANCE OF EQUITIES AND PUBLIC INTEREST STRONGLY FAVOR AN INJUNCTION. ............................................................................. 18

    IV.   NO BOND SHOULD BE REQUIRED. .................................................. 25

CONCLUSION ................................................................................................ 25

CERTIFICATE OF COMPLIANCE ...................................................................... 27

<u>TABLE OF AUTHORITIES</u>

**Cases**

*Alaska Wilderness Recreation & Tourism Ass'n v. Morrison*,
   67 F.3d 723, 729 (9th Cir. 1995) .................................................................12

*All. for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) ........................................................ 5, 10, 11

*Amoco Prod. Co. v. Vill. of Gambell*,
   480 U.S. 531 (1987) ........................................................................... 6, 22

*Burford v. Sun Oil Co.*,
   319 U.S. 315 (1943) .................................................................................. 24

*California v. Azar*,
   911 F.3d 558 (9th Cir. 2018) ..................................................................... 11

*California v. Block*,
   690 F.2d 753 (9th Cir. 1982) ..................................................................... 15

*Drakes Bay Oyster Co. v. Jewell*,
   747 F.3d 1073 (9th Cir. 2014) ................................................................... 21

*Earth Island Inst. v. Carlton*,
   626 F.3d 462 (9th Cir. 2010) ..................................................................... 22

*Env't Prot. Info. Ctr. v. Carlson*,
   968 F.3d 985 (9th Cir. 2020) ..................................................................... 10

*Feldman v. Ariz. Sec'y of State's Off.*,
   843 F.3d 366 (9th Cir. 2016) ....................................................................... 5

*Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*,
   528 U.S. 167 (2000) ...................................................................................... 6

*Friends of the Wild Swan v. Weber*,
    767 F.3d 936 (9th Cir. 2014) ........................................................ 6

*Friends of Yosemite Valley v. Kempthorne*,
    520 F.3d 1024 (9th Cir. 2008) ..................................................... 12

*Golden Gate Rest. Ass'n v. City of S.F.*,
    512 F.3d 1112 (9th Cir. 2008) ..................................................... 24

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977) ....................................................................... 6

*Lands Council v. McNair*,
    537 F.3d 981 (9th Cir. 2008) ................................... 6, 18, 20, 23

*League of Wilderness Defenders/Blue Mts. Biodiversity Project v. Connaughton*,
    752 F.3d 755 (9th Cir. 2014) ............................................... 19, 20

*M.R. v. Dreyfus*,
    697 F.3d 706 (9th Cir. 2012) ........................................................ 8

*Morongo Band of Mission Indians v. FAA*,
    161 F.3d 569 (9th Cir. 1998) ..................................................... 12

*N. Alaska Envtl. Center v. Hodel*,
    803 F.2d 466 (9th Cir. 1986) ..................................................... 20

*Nat'l Parks & Conserv. Ass'n v. Babbitt*,
    241 F.3d 722 (9th Cir. 2001) ..................................................... 20

*Nken v. Holder*,
    556 U.S. 418 (2009) ..................................................................... 18

*Or. Nat'l Res. Council Fund v. Goodman*,
    505 F.3d 884 (9th Cir. 2007) ..................................................... 20

x

*Resources Ltd. v. Robertson*,
　　35 F.3d 1300, 1307 (9th Cir. 1994). ............................................................. 12

*S. Fork Band Council of W. Shoshone v. U.S. DOI*,
　　588 F.3d 718 (9th Cir. 2009) ................................................................ 20, 24

*Save Our Sonoran, Inc. v. Flowers*,
　　408 F.3d 1113 (9th Cir. 2005) ................................................................ 7, 18

*Se. Alaska Conserv. Council v. U.S. Army Corps of Eng'rs*,
　　472 F.3d 1097 (9th Cir. 2006) ....................................................................... 19

*Sierra Club v. Bosworth*,
　　510 F.3d 1016 (9th Cir. 2007) ...................................................................... 24

*Sierra Club v. Trump*,
　　963 F.3d 874 (9th Cir. 2020) ......................................................................... 9

*Sierra Club v. U.S. Army Corps of Eng'rs*,
　　645 F.3d 978 (8th Cir. 2011) ....................................................................... 10

*Sierra Club v. U.S. Forest Serv.*,
　　843 F.2d 1190, 1195 (9th Cir. 1988) ............................................................ 18

*Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt. (SILA I)*,
　　555 F. Supp. 3d 739 (D. Alaska 2021) ................................................. Passim

*Sovereign Inupiat for a Living Arctic v. BLM* (*SILA II*),
　　2021 U.S. App. LEXIS 28468 (9th Cir. Feb. 13, 2021) ................................. 2, 7

*Stormans, Inc. v. Selecky*,
　　586 F.3d 1109 (9th Cir. 2009) ...................................................................... 23

*Tenakee Springs v. Clough*,
　　915 F.2d 1308 (9th Cir. 1990) ...................................................................... 17

xi

*United States v. McIntosh*,
    833 F.3d 1163 (9th Cir. 2016) ................................................... 25

*Winter v. NRDC, Inc.*,
    555 U.S. 7 (2008) ...................................................................... 5

**Statutes**
5 U.S.C. § 706 ................................................................................ 6
16 U.S.C. § 3101 ........................................................................... 25
16 U.S.C. § 3111 ........................................................................... 25
16 U.S.C. § 3112 ........................................................................... 25
16 U.S.C. § 3113 ........................................................................... 16
16 U.S.C. § 3120 ..................................................................... 16, 17
42 U.S.C. § 4332(2)(C)(iii) ......................................................... 11
42 U.S.C. § 6503 ........................................................................... 24
42 U.S.C. § 6504(a) ........................................................... 11, 12, 24
42 U.S.C. § 6506a ....................................................... 11, 12, 21, 24

**Regulations**
40 C.F.R. § 1508.1 ....................................................................... 11
43 C.F.R. §§ 3135.1-5 .................................................................. 21
43 C.F.R. § 3135.2 ................................................................. 12, 21

**Other**
Fed. R. App. P. 8 .......................................................................... 25

TABLE OF EXHIBITS

| Exhibit | Dist. Ct. Doc. # | Date | Description |
|---|---|---|---|
| 1 | ECF 23-13 | Mar. 2023 | Excerpts of U.S. Department of the Interior, Bureau of Land Management, Willow Master Development Plan Record of Decision (Feb. 2023) [ROD], *available at* https://eplanning.blm.gov/eplanning-ui/project/109410/570 |
| 2 | ECF 23-14 | Feb. 2023 | Excerpts of Bureau of Land Mgmt., Final Supplemental Environmental Impact Statement for the Willow Master Development Plan (Feb. 2023) [Final SEIS], *available at* https://eplanning.blm.gov/eplanning-ui/project/109410/570 Vol 1, 4 |
| 3 | ECF 23-15 | Jun. 2022 | Excerpts of Bureau of Land Mgmt., Draft Supplemental Environmental Impact Statement for the Willow Master Development Plan [Draft SEIS], *available at* https://eplanning.blm.gov/eplanning-ui/project/109410/570 |
| 4 | ECF 1 | Mar. 14, 2023 | Complaint for Declaratory and Injunctive Relief |
| 5 | ECF 22-1 | Mar. 16, 2023 | Declaration of Bridget Psarianos |
| 6 | ECF 23-1 | Mar. 16, 2023 | Memorandum in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction |
| 7 | ECF 23-3 | Mar. 16, 2023 | Declaration of Aaron Isherwood |
| 8 | ECF 23-4 | Mar. 16, 2023 | Declaration of Benjamin Greuel |

| 9 | ECF 23-5 | Mar. 16, 2023 | Declaration of Chad Brown |
|---|---|---|---|
| 10 | ECF 23-6 | Mar. 16, 2023 | Declaration of Daniel Ritzman |
| 11 | ECF 23-7 | Mar. 16, 2023 | Declaration of Elisabeth Balster Dabney |
| 12 | ECF 23-8 | Mar. 16, 2023 | Declaration of Kristen Miller |
| 13 | ECF 23-9 | Mar. 16, 2023 | Declaration of Ellen Montgomery |
| 14 | ECF 23-10 | Mar. 16, 2023 | Declaration of Sam Kunaknana |
| 15 | ECF 23-11 | Mar. 16, 2023 | Declaration of Siqiniq Maupin |
| 16 | ECF 23-18 | Feb. 1, 2023 | News Release, ConocoPhillips, Final SEIS Represents Major Milestone for the Willow Project and America's Energy Future |
| 17 | ECF 23-19 | Jan. 25, 2023 | Letter from Native Village of Nuiqsut and City of Nuiqsut |
| 18 | ECF 23-20 | Mar. 13, 2023 | News Release, ConocoPhillips, ConocoPhillips Welcomes Record of Decision on the Willow Project |
| 19 | ECF 48 | Mar. 24, 2023 | ConocoPhillips Alaska, Inc.'s Opposition to Motions for Preliminary Injunction |
| 20 | ECF 53 | Mar. 24, 2023 | Kuukpik's Opposition to Motion for Temporary Restraining Order and Preliminary Injunction |
| 21 | ECF 63-4 | Oct. 2020 | U.S. Department of the Interior, Bureau of Land Management, Willow Master Development Plan Record of Decision |
| 22 | ECF 74 | Apr. 3, 2023 | Order Re Motions for Temporary Restraining Order and Preliminary Injunction |
| 23 | ECF 75 | Apr. 3, 2023 | Plaintiffs' Notice of Appeal from a Judgment or Order of a United States District Court |

| 24 | ECF 76 | Apr. 4, 2023 | Plaintiffs' Motion for Injunction Pending Appeal, Expedited Consideration Requested |
|----|--------|--------------|---------------------------------------------------------------------------------|
| 25 | ECF 78 | Apr. 4, 2023 | Order Granting Motion to Expedite and Denying Plaintiffs' Motion for Injunction Pending Appeal |

## INTRODUCTION

Immediate injunctive relief is necessary to avoid imminent, irreparable destruction of Arctic wetlands and tundra, and harms to wildlife and people, caused by ConocoPhillips Alaska, Inc.'s (ConocoPhillips) construction of the Willow Master Development Project (Willow) in the National Petroleum Reserve–Alaska (Reserve). ConocoPhillips has already begun gravel mining and road construction activities, which will cause irreparable harm to Appellants Sovereign Inupiat for a Living Arctic et al. (collectively SILA). SILA is likely to succeed on the merits because the Bureau of Land Management (BLM) violated the National Environmental Policy Act (NEPA), the Naval Petroleum Reserves Production Act (NPRPA), and the Alaska National Interest Lands Conservation Act (ANILCA) when approving Willow. The balance of equities and public interest also favor an injunction pending appeal. The District Court erred in concluding SILA did not meet the requirements for a preliminary injunction.

## BACKGROUND

At approximately 22.8 million acres, the Reserve is the nation's largest single public land unit. Stretching across the Western Arctic, from the Chukchi and Beaufort Seas to the foothills of the Brooks Range, it provides rich habitat for wildlife, including two caribou herds that provide key subsistence resources for numerous communities. It is a mosaic of tundra wetlands. Ex. 2 at 16–18. The

Ublutuoch River and Fish Creek, which will be impacted by Willow, are significant coastal rivers important for subsistence use. *Id.* at 26, 28–29.

Willow is an extensive oil and gas production facility. When fully built, it will cause the direct, permanent loss of hundreds of acres of wetlands from fill and excavation, with thousands of acres of impacts extending beyond the development footprint. *Id.* at 8–9, 19. As originally proposed in 2018, Willow would include a spiderweb of gravel roads connecting to ConocoPhillips' Alpine field, a central processing facility, up to five drill pads, an airstrip, 300+ miles of pipelines, an ice bridge over the Colville River for module transport, and bridges over important subsistence waterways. *Id*. It also includes two gravel mine sites adjacent to the Ublutuoch River. *Id.* at 4. All action alternatives considered in the SEIS would require waivers of previously established river setbacks intended to protect subsistence and would place drilling pads and infrastructure or allow other activities in the Reserve's designated Special Areas. *Id.* at 7, 27.

BLM authorized Willow for the first time in January 2021. *Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.* (*SILA I*), 555 F. Supp. 3d 739 (D. Alaska 2021). SILA challenged those approvals and obtained injunctive relief from this Court to preclude winter construction while the case was pending. *Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.* (*SILA II*), 2021

2

U.S. App. LEXIS 28468 (9th Cir. Feb. 13, 2021). In August 2021, the District Court vacated BLM's record of decision (ROD) and environmental impact statement (EIS) and the U.S. Fish and Wildlife Service's biological opinion due to critical flaws in the agencies' analyses, including the failure to consider a reasonable range of alternatives. *SILA I*, 555 F. Supp. 3d at 804–05.

On remand, BLM prepared an SEIS, in which BLM considered only one new alternative: Alternative E. Ex. 3 at 1. Alternative E included four drill sites instead of five; it eliminated the drill site at Bear Tooth (BT) 4 within the Teshekpuk Lake Special Area (TLSA) and deferred approval of BT5. *Id.* at 2. Alternative E otherwise largely included the same infrastructure, mitigation, and design features as ConocoPhillips' original proposal. *Id.*

3



Ex. 2 at 54.

In February, BLM released its final SEIS. The final SEIS suffered from the same flaws as the draft SEIS.

BLM finalized its ROD on March 12, 2023, adopting Alternative E with additional modifications. Ex. 1 at 11. BLM approved drill sites BT1, BT2, and BT3, but purported to disapprove rather than defer BT5. *Id.* at 11–12.

BLM also issued an amended 30-year right-of-way and authorized ConocoPhillips to proceed with construction activities this winter. Ex. 5 ¶ 5. ConocoPhillips' activities this winter include gravel mining and road building. *Id.*

4

¶ 8. ConocoPhillips immediately began ice road construction to the gravel mine site.

SILA filed its lawsuit challenging BLM's approvals on March 14, 2023, and sought a preliminary injunction to halt construction activities. Ex. 4; Ex. 6. The District Court denied SILA's motion for a preliminary injunction, concluding that there would not be irreparable harm and that the balance of equities and public interest favored denial of the injunction. Ex. 22.

ConocoPhillips is now proceeding with gravel mining and road construction activities. Circuit R. 27-3 Certification, *supra*, ¶ 6.

## LEGAL STANDARDS

The standard for an injunction pending appeal is the same as a preliminary injunction. *Feldman v. Ariz. Sec'y of State's Office*, 843 F.3d 366, 367 (9th Cir. 2016) (en banc). Plaintiffs must establish: (1) likely success on the merits; (2) likely irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Defense Council* (*Winter*), 555 U.S. 7, 20 (2008). Plaintiffs can obtain an injunction by showing "serious questions going to the merits … and the balance of hardships tips sharply in [their] favor" provided the other factors are met. *Alliance for the Wild Rockies v. Cottrell* (*Alliance*), 632 F.3d 1127, 1131 (9th Cir. 2011). The showing for serious questions is a lower bar than demonstrating

5

likely success on the merits. *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014).

The District Court's denial of injunctive relief is reviewed for abuse of discretion. *Lands Council v. McNair*, 537 F.3d 981, 986 (9th Cir. 2008) (en banc) *overruled in part on other grounds by Winter*, 555 U.S. 7. The "district court abuses its discretion … if it bases its decision on an erroneous legal standard or clearly erroneous findings of fact." *Id.* (internal citations omitted). The Court reviews the merits under the Administrative Procedure Act. 5 U.S.C. § 706(2).

<u>ARGUMENT</u>

## I. SILA WILL SUFFER IRREPARABLE HARM.

ConocoPhillips commenced construction activities, which will include developing the gravel mine using explosives to remove tundra and soil layers, excavating gravel, gravel hauling, and placing gravel for permanent roads. Ex. 22 at 8–11. SILA's members and supporters face imminent, irreparable harm from these activities.[1] The damage from blasting and other operations will be permanent. *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987) ("Environmental

---

[1] Because of these harms, SILA has standing. *See Friends of the Earth, Inc. v. Laidlaw Env't. Servs.*, 528 U.S. 167, 180–81 (2000) & *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 341–45 (1977) (standing test); *see also* Exs. 7–15 (declarations describing interests and harm).

cont…

injury, by its nature, … is often permanent or at least of long duration, *i.e.*, irreparable."); *see also Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1124 (9th Cir. 2005) ("[O]nce the desert is disturbed, it can never be restored.").[2]

BLM acknowledged gravel mining and road building would irreparably harm wetlands, wildlife, and subsistence use; its conclusions were not limited to full-project development. In the final SEIS, BLM explained that "[g]ravel fill would cover soils and kill existing vegetation, altering the thermal active layer indefinitely" and stated impacts to the permafrost from the gravel mine "would be irreversible" and "permanent." Ex. 2 at 11–12, 19; *see also id.* at 20, 22 (acknowledging gravel fill "would permanently remove or alter wetlands and wetlands functions"). BLM explained Willow's roads and infrastructure would visually impact subsistence users and visitors for the project duration and would be irreversible without reclamation. *Id.* at 13–14, 16, 23–25. BLM stated gravel roads have "a high potential" to disturb caribou and impact hunting activities, and there would be permanent losses of caribou habitat from the project. *Id.* at 23–25, 39. Importantly, BLM found Willow is "likely to deflect … caribou from where Nuiqsut hunters harvest them" near the mine and the altered distribution and

---

[2] This Court previously found SILA "will suffer irreparable harm in the absence of an injunction" from similar activities. *SILA II*, 2021 U.S. App. LEXIS 28468, at *6–7.

deflection of caribou could have "large impacts to hunter success." *Id.* at 42. BLM also specifically found Willow "would constitute a substantial restriction on subsistence access for Nuiqsut residents," particularly during construction. *Id.* at 43.

The District Court misapplied the standard in finding there would not be harm to SILA. The Court stated that "to show irreparable harm, Plaintiffs' declarations at a minimum must show that at least one or more of their members will be irreparably harmed if the Winter 2023 Construction Activities were to proceed." Ex. 22 at 26. However, the Court did not apply that standard when reviewing Sam Kunaknana's declaration. Instead, the Court determined, based on declarations from other hunters, SILA did not establish irreparable harm to subsistence caribou hunters. Ex. 22 at 22–23. To obtain a preliminary injunction, SILA must only demonstrate harm to its members, not to a broader class of users. *See M.R. v Dreyfus*, 697 F.3d 706, 729–32 (9th Cir. 2012) (explaining irreparable injury established when plaintiffs submitted detailed evidence of how challenged action individually impacts them). When the proper standard is applied, SILA demonstrated that ConocoPhillips' ongoing construction of permanent infrastructure will irreparably harm members' subsistence activities.

Sam Kunaknana explained, and Intervenor-Defendant Kuukpik Corporation

conceded, that his ability to hunt caribou in an area he currently relies on would be irreparably harmed by gravel mining this winter and into the future. Ex. 14 ¶¶ 9–10, 16–18, 25, 27–28, 32; Ex. 20 at 17. Mr. Kunaknana specifically states that he uses the part of the Ublutuoch River where the mine is being constructed for hunting and fishing and that once mining starts "this area will never be the same." Ex. 14 ¶ 10. He explains that he no longer hunts or fishes in areas that ConocoPhillips already developed, and that Willow's construction will make it harder for him to hunt and fish at his current, remaining locations. Ex. 14 ¶¶ 9, 27–28, 32. Mr. Kunaknana also explains how his ability to hunt caribou will be impacted by gravel mine blasting and road building — two activities occurring this winter that will permanently alter and degrade the areas he relies on. Ex. 14 ¶¶ 16–18, 25. He also currently fishes on the Ublutuoch River, where ConocoPhillips is blasting the gravel mine, and explained that it will permanently impact the area and deter his use of that area. Ex. 14 ¶¶ 9–10, 27.[3] Mr. Kunaknana's identity and way of life as an Iñupiat are inextricably tied to his ability to hunt and fish in the remaining infrastructure-free areas around his home, and he has already

---

[3] The District Court's finding that there would not be harm to fish from the mine, Ex. 22 at 20–22, misses the point. The harm to Mr. Kunaknana is deterrence of his use of the area for fishing. Ex. 14 ¶¶ 9, 27, 32; *see Sierra Club v. Trump*, 963 F.3d 874, 895 (9th Cir. 2020) (recognizing harm from loss of use of area even though different areas may be available).

9

experienced his traditional hunting and fishing areas taken away by development. Ex. 14 ¶¶ 25–27, 32. The subsistence resources he relies on and his ability to continue practicing his subsistence way of life in his traditional hunting and fishing areas will be irreparably harmed by ConocoPhillips' mining and construction activities. Ex. 14 ¶¶ 32, 35.

Similarly, Daniel Ritzman explains that the gravel mine would harm his recreational use of the area and his ability to view wildlife. Ex. 10 ¶¶ 26, 29, 32–33. Contrary to the District Court's finding, Ex. 22 at 27–28, Mr. Ritzman explains that he intends to explore the area surrounding Nuiqsut, including the Ublutuoch River as part of his overall trip itinerary, but will not if the project proceeds. Ex. 10 ¶¶ 32–33.

As the Ninth Circuit explained, "[w]hen a project may significantly degrade some human environmental factor, injunctive relief is appropriate." *Envtl. Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 991 (9th Cir. 2020). SILA's specific allegations of irreparable harm from ConocoPhillips' ongoing activities warrant an injunction. *Alliance*, 632 F.3d 1127, 1135 (9th Cir. 2011) (explaining harm to members' "ability to view, experience, and utilize the areas in their undisturbed state" is irreparable harm (internal quotation marks omitted)); *Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 995 (8th Cir. 2011) ("[I]rreparable harm to

10

the environment necessarily means harm to the plaintiffs' specific aesthetic, educational, and ecological interests.").

The District Court also erred by focusing on the number of acres impacted relative to the overall average of the Reserve in finding that there would not be impacts to SILA. Ex. 22 at 28–30. This is inconsistent with this Court's case law; the relevant inquiry is the irreparability of the harm to the plaintiffs, not its magnitude in relation to the landscape. *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018); *Alliance*, 632 F.3d at 1135.

## II.    SILA IS LIKELY TO SUCCEED ON THE MERITS.

The District Court did not decide whether SILA was likely to succeed on the merits. Ex. 22 at 44. However, SILA demonstrated a likelihood of success on the merits and, at a minimum, raised "serious questions" on the merits.

### A.    SILA Is Likely to Succeed on the Merits of Its NEPA and NPRPA Claim.

BLM violated NEPA's core mandate to consider a reasonable range of alternatives, as well as the NPRPA's protective mandates, by improperly limiting its consideration of alternatives to only those that would not strand an economically viable quantity of oil.  42 U.S.C. § 4332(2)(C)(iii); 40 C.F.R. § 1508.1(z); 42 U.S.C. §§ 6506a(b), 6504(a); Ex. 3 at 4; Ex 2 at 33, 46–47. This limitation is nearly the same as BLM's previously unlawful "view that it must

11

allow ConocoPhillips to extract all possible oil and gas on its leases." *SILA I*, 555 F. Supp. 3d at 770.

Under NEPA, "[a]n agency must look at every reasonable alternative, with the range dictated by the nature and scope of the proposed action, and sufficient to permit a reasoned choice." *Friends of Yosemite Valley v. Kempthorne*, 520 F.3d 1024, 1038 (9th Cir. 2008) (quoting *Alaska Wilderness Recreation & Tourism Ass'n v. Morrison*, 67 F.3d 723, 729 (9th Cir. 1995)) (internal quotation marks omitted). "The existence of a viable but unexamined alternative renders an [EIS] inadequate." *Morongo Band of Mission Indians v. Fed. Aviation Admin*., 161 F.3d 569, 575 (9th Cir. 1998) (quoting *Resources Ltd. v. Robertson*, 35 F.3d 1300, 1307 (9th Cir. 1994)).

The NPRPA mandates that BLM "shall include or provide for such conditions, restrictions, and prohibitions" on activities within the Reserve as it determines necessary to protect surface resources and requires "maximum protection" of surface values in Special Areas. 42 U.S.C. §§ 6506a(b), 6504(a). This authority is extremely broad and includes the power to suspend all operations on existing leases or units in the interest of conservation of natural resources or to mitigate adverse effects. *Id*. § 6506a(k)(2); 43 C.F.R. § 3135.2(a)(1), (3).

The District Court previously held BLM acted contrary to law by failing to

12

consider the NPRPA's directive that BLM provide "maximum protection" for surface values within the TLSA and by constraining its consideration of alternatives and mitigation measures based on the erroneous belief that ConocoPhillips had the right to extract all oil and gas from its leases. *SILA I*, 555 F. Supp. 3d at 770. The Court held that, to the extent BLM relied on the flawed assertion that ConocoPhillips has a right to develop all oil on its leases "to not examine other alternatives, its alternatives analysis was inadequate." *Id.* at 769.

BLM repeated this legal error in the SEIS and ROD by improperly limiting the scope of its authority to consider alternatives. On remand, BLM screened alternatives based on the assumption that it must not strand economically viable quantities of recoverable oil and must allow "full development of the Willow Reservoir." Ex. 2 at 3, 51; Ex. 3 at 6. BLM defined "full development" to mean it could not consider an alternative that would strand an economically viable quantity of oil — meaning, a quantity that warrants an additional drilling pad. Ex. 3 at 3; Ex. 2 at 33, 46–47. BLM did not explain how it generated this definition or how it was meaningfully different from its prior, erroneous assumption that it was required to allow ConocoPhillips to develop all, or nearly all, of the oil resources under the leases.

In rejecting alternatives that would preclude drilling and infrastructure in

13

TLSA, BLM acknowledged "this alternative concept would theoretically address the District Court's directive to provide maximum protection to important surface resources in the TLSA," but stated "it would not meet the Project's purpose and need and would strand an economically viable quantity of recoverable oil." Ex. 2 at 37; *see also id*. at 36 (BLM explaining pad was required because "there is an economically viable quantity of recoverable oil in this area"). As a result, similar to its prior decision, BLM improperly limited its consideration of reasonable alternatives. *SILA I*, 555 F. Supp. 3d at 769. BLM also never explained, and it is unclear on its face, why alternatives that would reduce infrastructure or locate it outside of sensitive areas would be inconsistent with the purpose and need. Ex. 2 at 1–2 (stating purpose and need is "to construct the infrastructure necessary to allow the production and transportation to market of federal oil and gas resources in the Willow reservoir … while providing maximum protection to significant surface resources within the NPR-A"). Either way, that purpose could not override BLM's statutory obligations to protect areas like the TLSA.

The addition of Alternative E in the final SEIS and BLM's adoption of it as modified does not save BLM's faulty analysis. All action alternatives still included infrastructure in the TLSA and Colville River Special Area and presented only small variations on ConocoPhillips' proposed project. Ex. 2 at 3, 7. BLM's prior

14

unlawful approval similarly only authorized three drill sites and deferred a decision on BT4 and BT5. Ex. 21. Even to the extent Alternative E might have slightly reduced the impacts, it does not alter that BLM improperly limited the alternatives to only those allowing for nearly full-field development of the Willow reservoir. *California v. Block*, 690 F.2d 753, 767 (9th Cir. 1982) (rejecting alternative analysis where agency "uncritically assumes that a substantial portion of the [] areas should be developed and considers only those alternatives with that end result"). That limitation precluded BLM from considering alternatives that were meaningfully different.

Overall, BLM's flawed screening criteria severely curtailed the agency's consideration of reasonable alternatives that address Willow's significant impacts to climate, wildlife, subsistence, and other natural values. As with its prior decision, BLM's framework for considering and rejecting alternatives was "inconsistent with its own statutory responsibility to mitigate adverse effects on the surface resources." *SILA I*, 555 F. Supp. 3d at 769; *see* Ex. 2 at 1–2.

**B.    BLM Violated ANILCA Section 810 by Failing to Consider Alternatives that Reduce Impacts to Subsistence Uses.**

BLM violated ANILCA by failing to consider adequate alternatives and measures to reduce impacts to subsistence. When permitting a use of public lands in Alaska, ANILCA Section 810 imposes specific requirements for agencies to

15

evaluate "other alternatives which would reduce or eliminate the use, occupancy, or disposition of public lands needed for subsistence purposes" in addition to evaluating the effects of a project and the availability of other lands. 16 U.S.C. § 3120(a); *see also id.* § 3113 (defining subsistence). If an agency determines its proposed action significantly restricts subsistence uses, it is required to make further findings. *Id*. § 3120(a). Specifically, the agency must determine whether such a restriction is necessary and consistent with sound public lands management; that the activity will involve the minimal amount of public lands necessary to accomplish its purposes; and require reasonable steps to minimize adverse impacts on subsistence. *Id*. § 3120(a)(3).

BLM acknowledges that none of the action alternatives considered in the draft or final SEIS meaningfully reduced ConocoPhillips' use and occupancy of public lands needed for Nuiqsut's subsistence purposes. Although Alternative E purportedly reduced infrastructure in the TLSA to lessen impacts to caribou hunting, BLM admitted the benefits to subsistence users from doing that would be "minimal." Ex. 2 at 41. BLM recognized that "the reduction in infrastructure in the TLSA under Alternative E will not result in a substantial reduction in direct impacts on Nuiqsut subsistence harvesters compared to the other action alternatives." Ex. 2 at 30. Indeed, BLM found that only "a slightly smaller

16

percentage of Nuiqsut harvesters (88%) would potentially be affected under Alternative E compared to Alternative B (91%)." Ex. 2 at 42. Even with Alternative E's additional mitigation measures, BLM still found there would be significant impacts to subsistence and that those impacts were not meaningfully reduced by any alternatives. Ex. 1 at 119; Ex. 2 at 43. BLM did not seriously consider any alternatives that would "reduce or eliminate the use, occupancy, or disposition of public lands needed for subsistence purposes." 16 U.S.C. § 3120(a).

Despite the likely significant impacts to subsistence, BLM improperly limited the scope of its alternatives by relying on the erroneous assumption that it could not strand economically viable quantities of recoverable oil. Ex. 2 at 36, 51. In *Tenakee Springs v. Clough*, the Ninth Circuit rejected arguments that an agency's contractual obligation with industry should preempt laws designed to protect subsistence and the environment, including Section 810. 915 F.2d 1308, 1312 (9th Cir. 1990). Similarly, here BLM confined itself in how it interpreted its obligations under ConocoPhillips' leases and improperly limited its consideration of alternatives, contrary to the substantive purpose of Section 810 to minimize impacts to subsistence. Ex. 2 at 36, 51.

Given BLM arbitrarily limited the scope of alternatives under consideration, its findings that Alternative E adequately incorporated protections to reduce

17

subsistence impacts were also arbitrary. 16 U.S.C. § 3120(a)(3)(B). BLM's statements that its decision would involve the minimum amount of public lands necessary and includes reasonable steps to minimize adverse impacts to subsistence are unsubstantiated and not entitled to deference because BLM limited its consideration of alternatives and other measures to only those that would not limit access to economically recoverable oil. Ex. 1 at 119–20. Had BLM not operated under that assumption, it could have considered other alternatives or measures to further minimize the impacts to subsistence.

## III. THE BALANCE OF EQUITIES AND PUBLIC INTEREST STRONGLY FAVOR AN INJUNCTION.

SILA's likely success on the merits and the irreparable harm it will suffer strongly tip the equities and public interest in favor of an injunction; the District Court abused its discretion in finding the contrary. Ex. 22 at 34–44. In cases against the government, the balance of equities and public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Where environmental injury is "sufficiently likely, the balance of harms will usually favor" an injunction. *Save Our Sonoran, Inc*., 408 F.3d at 1125 (quoting *Sierra Club v. U.S. Forest Serv.*, 843 F.2d 1190, 1195 (9th Cir. 1988)). The "public interest in preserving nature and avoiding irreparable environmental injury" is well-established. *Lands Council v. McNair* (*McNair*), 537 F.3d 981, 1005 (9th Cir. 2008) (en banc).

18

The District Court erred in considering economic harm that will occur in the future from full development, beyond when the preliminary injunction would be in place. Ex. 22 at 35–36 (considering taxes, grants, jobs, and dividends). The proper scope is the timeframe that the injunction will be in place: only until the court decides the merits of the case.[4] *League of Wilderness Defs./Blue Mountain Biodiversity Project v. Connaughton* (*Connaughton*), 752 F.3d 755, 765–66 (9th Cir. 2014). Purported future economic impacts do not, therefore, come into consideration. *See Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 472 F.3d 1097, 1101 (9th Cir. 2006) ("Although the public has an economic interest in the mine, there is no reason to believe that the delay in construction activities caused by the court's injunction will reduce significantly any future economic benefit that may result from the mine's operation.").

In determining that local jobs and revenue tipped the equities against an injunction, the District Court failed to acknowledge that these seasonal jobs will not be lost, only delayed. Ex. 22 at 34–35.[5] As this Court explained, "[b]ecause the

---

[4] SILA anticipates pursuing a summary judgment briefing schedule that allows the District Court to decide the merits prior to next winter's construction season.

[5] The Court similarly weighed the benefit to subsistence users from the road and boat ramp. Ex. 22 at 38–39. Any benefit from a road and ramp will also only be delayed, not lost, which the District Court failed to account for. Additionally, no party asserted that subsistence users who may use the road would otherwise be harmed without it this season.

jobs and revenue will be realized if the project is approved, the marginal harm to the intervenors of the preliminary injunction is the value of moving those jobs … to a future year." *Connaughton*, 752 F.3d at 765–66; *see also id.* at 767 (noting that jobs can proceed if project upheld); *S. Fork Band Council of W. Shoshone v. U.S. DOI*, 588 F.3d 718, 728 (9th Cir. 2009) (explaining economic harm of lost employment mostly temporary).

Because these economic interests are temporary, they do not overcome the permanent harm to SILA from this winter's activities. *Or. Natural Res. Council v. Goodman*, 505 F.3d 884, 898 (9th Cir. 2007) ("[T]he risk of permanent ecological harm outweighs the temporary economic harm that [the permittee] may suffer."); *Nat'l Parks & Conservation Ass'n v. Babbitt*, 241 F.3d 722, 738 (9th Cir. 2001) (finding economic injury to cruise industry "does not outweigh" irreparable environmental harm); *N. Alaska Envtl. Ctr. v. Hodel*, 803 F.2d 466, 471 (9th Cir. 1986) (stating "[m]ore than pecuniary harm must be demonstrated" to avoid injunction).[6]

---

[6] The District Court's reliance on cases favoring economic interests was skewed and contrary to *McNair*. Ex. 22 at 38 n.152 (citing *McNair* and other cases). As this Court explained in *McNair*, when a plaintiff is unlikely to succeed on the merits, potential environmental harm will not automatically result in an injunction. 537 F.3d at 1003–05. But the Court reaffirmed that the public interest favors protecting the environment and "avoiding environmental injury outweighs economic concerns in cases where plaintiffs were likely to succeed on the merits of

cont…

Regarding economic harm to ConocoPhillips, the District Court properly rejected the argument that construction delay would threaten the overall project and the company's leases. ConocoPhillips argued that, if the project was enjoined, its leases would expire on September 1, 2029, because it would be unable to produce oil by then. Ex. 19 at 48–49. This concern is unfounded because BLM cannot terminate leases that are capable of production but not yet producing for reasons beyond the control of the lessee. 42 U.S.C. § 6506a(i)(6); *see also id.* § 6506a(i)(3) (directing renewal of leases that are not producing if the Secretary finds diligence by lessee). ConocoPhillips can also request a lease suspension to delay lease expiration. 43 C.F.R. §§ 3135.1-5(b), 3135.2(b)–(c). The District Court erred, however, by then presuming, without any evidence, that there would be an economic impact to the company because it would be unable to recoup expenses from this season. Ex. 22 at 36 & n.144. Absent specific evidence from ConocoPhillips of economic harm, this was an abuse of discretion.

Additionally, ConocoPhillips' economic injuries are self-inflicted business decisions that deserve no weight because the company took the risk, knowing of the potential delays, and has not yet made a final investment decision for the project. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1093 (9th Cir. 2014)

---

their underlying claim." *Id.* at 1005. The District Court did not properly apply that case here because it did not reach the merits.

21

(explaining companies that presume permitting outcomes assume the risk); Ex. 19 at 48–49; Ex. 16; Ex. 18 (explaining ConocoPhillips must still make final investment decision). The fact that ConocoPhillips must make a final investment decision demonstrates that the economic impacts are speculative and uncertain.

The District Court erred by relying on this Court's decision in *Earth Island Institute v. Carlton*, 626 F.3d 462 (9th Cir. 2010), in balancing the equities and giving significant weight to economic harms. Ex. 22 at 32–36. That case is distinguishable because SILA will suffer irreparable harm and demonstrated a likelihood of success on the merits. *Supra* Argument Parts I & II. In contrast, in *Earth Island Institute*, the plaintiffs only established a possibility of harm and did not demonstrate a likelihood of success on the merits, so the Court affirmed the District Court's giving more weight to economic harms in balancing the equities. 626 F.3d at 469–76. Further, the applicability of *Earth Island Institute* is limited because, there, the Court relied on multiple factors beyond the immediate impact to the local economy in finding that the equities did not favor an injunction, including that the entire project could be compromised. *Id.* at 475–76. Here, the District Court rejected ConocoPhillips' argument that the entire project would be compromised by a preliminary injunction. Ex. 22 at 36 n.144.

Similarly, the District Court's reliance on *Amoco Production Co. v. Village*

22

*of Gambell*, 480 U.S. 531 (1987), is misplaced because the Court there concluded that harm to subsistence was "not at all probable" and, therefore, the economic considerations tipped the balance. That is in stark contrast to the present case, where Mr. Kunaknana explained how his subsistence use and access will be immediately and irreparably harmed and even BLM recognized there would be significant harm to subsistence. *Supra* Argument Part I. Additionally, the District Court's reading of *Amoco* goes too far in implying that economic injury here outweighs any subsistence harm. Ex. 22 at 38. That is contrary to Congress' intent in ANILCA to protect subsistence. *See supra* Argument Part II.B.

There is also a significant public interest in protecting the Reserve. Where plaintiffs are likely to succeed on the merits, as SILA is, this Court has consistently held that "the public interest in preserving nature and avoiding irreparable environmental injury outweighs economic concerns." *McNair*, 537 F.3d at 1005.

The District Court misapplied multiple cases to give "considerable weight" to the Alaska Legislature's resolution supporting Willow. Ex. 22 at 41–43.[7] Those cases involved governing bodies with direct jurisdiction over the decision at issue. *See, e.g.*, *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1113, 1140 (9th Cir. 2009)

---

[7] Notably, governmental support is not unanimous; both the City of Nuiqsut and the Native Village of Nuiqsut voiced considerable concerns about the project. Ex. 17.

23

(considering enjoining rule issued by the Washington State Board of Pharmacy); *Golden Gate Rest. Ass'n v. City & Cnty. of S.F.*, 512 F.3d 1112, 1126–27 (9th Cir. 2008) (considering enjoining ordinance adopted by local board of supervisors and signed by mayor); *Burford v. Sun Oil*, 319 U.S. 315, 318 (1943) (considering validity of order issued by the Texas Railroad Commission pursuant to state oil and gas regulations). In contrast, SILA challenges a decision made by a federal agency under federal laws concerning the management of federal land — not matters under the jurisdiction of the Alaska Legislature or any local government. Because its reliance on these cases was flawed, the District Court gave improper weight to the position of the Alaska Legislature.

The District Court also gave inappropriate weight to the NPRPA's leasing program as indicative of Congress' intent to allow oil development, but failed to consider the strong public interest in ensuring compliance with the law and the countervailing statutory mandates for the protection of land and resources. Ex. 22 at 42–43; *S. Fork Band*, 588 F.3d at 728 (explaining public interest under NEPA requires careful consideration of environmental impacts before projects proceed); *Sierra Club v. Bosworth*, 510 F.3d 1016, 1033–34 (9th Cir. 2007) (explaining public interest in preserving environment and resources). While the NPRPA provides for leasing, Congress also mandated protection of the Reserve's resources

24

and uses, 42 U.S.C. §§ 6503(b), 6504(a), 6506a(b), and ANILCA mandates protection of subsistence use and access. 16 U.S.C. §§ 3101(b), (c), 3111, 3112; *supra* Argument Part II.B. The District Court improperly ignored these countervailing interests. *Cf. United States v. McIntosh*, 833 F.3d 1163, 1172 (9th Cir. 2016) (explaining Courts cannot ignore congressional directives and priorities). Because Congress established these mandates, the District Court also gave improper weight to the position of Alaska's Congressional delegation. Ex. 22 at 42–43.

## IV. NO BOND SHOULD BE REQUIRED.

Plaintiffs are non-profit organizations seeking to further the strong public interest in preventing irreparable harm and ensuring compliance with the law. This Court should not require a bond because doing so would have a chilling effect on public interest litigation to protect the environment. Ex. 11 ¶ 28; Ex. 7 ¶¶ 4–11; Ex. 12 ¶ 24; Ex. 8 ¶ 39; Ex. 15 ¶ 27; Ex. 13 ¶ 24; *see also* Fed. R. App. P. 8(a)(2)(E).

## CONCLUSION

This Court should grant SILA's emergency motion for an injunction pending a final decision on the merits of this appeal.

Respectfully submitted this 5th day of April, 2023.

s/ Suzanne Bostrom
Bridget Psarianos (AK Bar No. 1705025)
Suzanne Bostrom (AK Bar No. 1011068)

Brook Brisson (AK Bar No. 0905013)
TRUSTEES FOR ALASKA
121 W. Fireweed Lane, Suite 105
Anchorage, AK 99503
(907) 276-4244
bpsarianos@trustees.org
sbostrom@trustees.org
bbrisson@trustees.org

Counsel for Plaintiffs-Appellants

CERTIFICATE OF COMPLIANCE

I certify that:

(1) This document contains 5564 words, excluding the items exempted by Federal Rules of Appellate Procedure 27(a)(2)(B) and 32(f). When divided by 280, the word length of this document does not exceed 20 pages, in compliance with Circuit Rules 27-1(1)(d) and 32-3(2); and

(2) This document's type size and typeface comply with Federal Rule of Appellate Procedure 32(a)(5) and (6).

Signature:  *s/Suzanne Bostrom*          Date: April 5, 2023